IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GENE DOLLANDER,                    *
                                   *
         Plaintiff,                *
                                   *
    v.                             *      CV 106-065
                                   *
JAMES B. PEAKE, Secretary of the   *
Department of Veterans Affairs,[1] *
                                   *
         Defendant.                *

---

O R D E R

---

Presently before the Court in the captioned case is the government's "Motion for Judgment on the Administrative Record." (Doc. no. 36.) Plaintiff has filed a response opposing the government's motion. (Doc. no. 43.) Upon consideration of the record evidence,[2] the relevant law, and the parties' briefs, the government's motion is **GRANTED**.

---

[1] The Court takes judicial notice of the fact that on December 20, 2007, James B. Peake was sworn in as Secretary of the United States Department of Veterans Affairs ("DVA"). Accordingly, pursuant to Fed. R. Civ. P. 25(d), the Clerk is **DIRECTED** to substitute Secretary Peake as the Defendant in this case. Further, because Secretary Peake is the only defendant as to Plaintiff's sole remaining claim regarding his request for review of a DVA Disciplinary Appeals Board decision, (see Sec. Am. Compl.), all other Defendants have been **DISMISSED** from this action and the Clerk is directed to correct the docket accordingly.

[2] The "record evidence" consists of the Certified Copy of the Administrative Record of the DVA, as submitted to the Court on November 19, 2007. (See doc. no. 41.) The Administrative Record, which totals 647 pages, will be cited as "R."

# I. PROCEDURAL HISTORY

*Pro se* Plaintiff, a registered nurse who was formerly employed at the Charlie Norwood Veterans Affairs Medical Center ("VAMC") Uptown Division in Augusta, Georgia, filed his initial complaint in the captioned case on May 15, 2006, seeking relief against a host of current and former VAMC employees based upon five enumerated claims.[3] (See Compl.) Plaintiff failed to properly effect service of process within the 120 day period required by Fed. R. Civ. P. 4(m); however, Plaintiff provided the necessary proof of service within the extended time period provided by the United States Magistrate Judge.

On May 2, 2007, the Court granted the government's motion to dismiss Plaintiff's claims for medical malpractice and wrongful death as well as Plaintiff's defamation claim. (See Order of May 2, 2007 at 2-5). With regard to Plaintiff's remaining claims for employment retaliation and discrimination, "judicial review" of "adverse personnel actions," and for violations of certain unspecified "federal laws," the Court granted the government's motion for a more definite statement. (Id.) Accordingly, Plaintiff was directed to replead in accord with the instructions set forth

---

[3]This is the third action Plaintiff has brought in this District against his former employer. See Dollander v. Prinicipi, CV 103-079 (S.D. Ga. May 22, 2003); Dollander v. Prinicipi, CV 100-209 (S.D. Ga. Nov. 7, 2000).

in the May 2nd Order and warned him that, if he failed to comply, sanctions - including the outright dismissal of his case - could be imposed. (Id. at 5-6.)

Plaintiff failed to submit an amended complaint within the time frame set forth by the Court's May 2nd Order. However, on June 29, 2007, the Court granted, in part, Plaintiff's "Request for the Court's Indulgence." (See Order of June 29, 2007.) Under the terms of the Court's June 29th Order, Plaintiff was granted fifteen (15) days from the date of that Order to properly amend his complaint. Despite the Court's "indulgence," Plaintiff, once again, failed to comply with the dictates of the May 2nd Order. Although Plaintiff filed an amended complaint on July 17, 2007, he did not include "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a); (see Am. Compl.).

Specifically, Plaintiff's amended complaint did not include any facts within the "Statement of Claim" section. Instead, Plaintiff merely requested that the Court review, pursuant to 38 U.S.C. § 7462, "major adverse personnel action" that was allegedly taken against him following the sudden death of a veteran who was a patient at the VAMC Uptown

Division.[4] (Am. Compl. at 5.) Despite this deficiency, the Court observed that Plaintiff's July 17, 2007 motion to replead was, apparently, an attempt to provide some background information concerning his request for judicial review of the purported wrongful employment action. (See Order of Sept. 6, 2007.) Accordingly, the Court granted Plaintiff a final opportunity to plead this claim and directed Plaintiff to submit a second amended complaint regarding his request for review of a DVA Disciplinary Appeals Board decision pursuant to 38 U.S.C. § 7462. Plaintiff submitted his second amended complaint on September 19, 2007.

The government filed the instant motion and a motion to limit judicial review to the Administrative Record compiled by the DVA on November 1, 2007. On December 10, 2007, the Court granted the government's request that the Court limit its review to the Administrative Record and directed Plaintiff to file any opposition to the government's motion for judgment on the Administrative Record, or to inform the Court of his decision not to object to motion, within twenty (20) days. Plaintiff filed a response opposing the government's motion on December 18, 2007.

---

[4]The DVA refers to this patient as "Patient B-5165" in order to safeguard the privacy of the patient and his family.

## II.  FACTUAL BACKGROUND

Around 10:35 a.m. on June 30, 2004, Patient B-5165 was transported to the VAMC Uptown Division Psychiatric Emergency Ambulatory Care Center ("PEACC") by a friend after he had fallen outside his home and reported not feeling well for a couple of days.  (R. at 641.)  A DVA Police Officer called Plaintiff, who was on duty at the time, and indicated that the patient had possibly fallen outside the facility.  Plaintiff transported the patient to the Uptown Triage Center, cleaned an abrasion over his right eye, reviewed his medical record, and, with the help of a nursing assistant, checked his vital signs.  Patient B-5165's blood pressure readings revealed orthostatic hypotension - low blood pressure after standing up - a significant abnormal clinical finding.  (Id.)

Plaintiff contacted the patient's primary mental health provider and psychiatrist, Dr. Stephen Byrd, and relayed what he had observed regarding the patient's condition.  Dr. Byrd, who saw the patient regularly in the Posttraumatic Stress Disorder Clinic, indicated that the patient's problems did not seem to be psychiatric in nature and that the patient was possibly suffering from dehydration.  (Id.)  It was agreed, after suggestion by Plaintiff, that the patient would see his primary medical physician, Dr. Montalvo, at the VAMC Uptown Division Primary Care Clinic ("PCC").  However, the patient

refused to go to the PCC. He indicated that he did not want to wait to be seen and left the facility with his friend around 11:00 a.m. Plaintiff did not contact Dr. Byrd and report this information. Later that day, the patient was transported back to the VAMC Uptown Division where he was pronounced dead at 12:19 p.m. (Id.)

The following day Plaintiff was reassigned out of direct patient care in the PEACC until an investigation into Patient B-5165's death could be conducted. (Id. at 571.) As a result of the investigation, Plaintiff was suspended without pay for fourteen (14) days and permanently reassigned from the PEACC to Inpatient Unit 2G. (Id. at 558, 641.) Plaintiff subsequently signed a release form and provided personal and medical information regarding the patient to the Honorable Charles Whitlow Norwood, Jr., United States House of Representatives, and the Honorable Zell Bryan Miller, United States Senate, requesting that they conduct an inquiry in the patient's death on his behalf. (Id. at 641, 643.)

Plaintiff appealed his suspension to a DVA Disciplinary Appeals Board ("DAB") and in September 2005 the DAB conducted an evidentiary hearing regarding the appeal. (See id. at 1-401.) On December 12, 2005, the DAB sustained three of the charges against Plaintiff: (1) failure to adequately perform job duties; (2) failure to comply with VAMC policy memoranda;

and (3) disclosure of confidential patient information.[5]  (Id. at 640-646.)  Based upon these charges, the DAB upheld the 14 day suspension.[6]  (Id.)

## III.  DISCUSSION

### A.  Relevant Statutory Framework and Legal Standard

Employment of DVA health-care professionals appointed under 38 U.S.C. § 7401(1)[7] is governed, in large part, by Chapter 74 of Title 38.  The provisions of this chapter treat these health-care professionals differently from ordinary civil service employees who are covered exclusively by Title 5.  Of particular relevance here is 38 U.S.C. § 7461(b)(1) which provides § 7401 employees the right to appeal to a DAB a "major adverse employment action"[8] resulting from a charge

---

[5]The DAB did not sustain the charge alleging that a violation of the Privacy Act, 5 U.S.C. §§ 552 et. seq., had occurred.  (R. at 644.)  As such, this charge is not at issue in the instant action.

[6]The propriety of the decision to transfer Plaintiff from the PEACC following the patient's death was not before the DAB.  (See R. at 641-47.)  Therefore, the matter is not presently before the Court.  It appears, however, that Plaintiff entered into a negotiated settlement agreement with the VAMC regarding, inter alia, his reassignment from the PEACC after he submitted a charge of employment retaliation and discrimination with the United States Equal Employment Opportunity Commission.  (Second Am. Compl., Attach. 3 at Tab 30.)

[7]"Physicians, dentists, podiatrists, chiropractors, optometrists, registered nurses, physician assistants, and expanded-function dental auxiliaries" are included under § 7401(1).

[8]A major adverse action is an adverse action that includes a suspension, transfer, reduction in grade, reduction in basic pay, or discharge.  38 U.S.C. § 7461(c)(2)(A)-(E).

that arises out of a question of professional conduct or performance.

The Court has jurisdiction to review the decision of a DAB pursuant to 38 U.S.C. § 7462(f)(2). Section 7462(f)(2) provides:

> In any case in which judicial review is sought under this subsection, the court shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be -
>
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> (B) obtained without procedures required by law, rule, or regulation having been followed; or
>>
>> (C) unsupported by substantial evidence.

The Court's review under this section "mirrors the standards for judicial review of other administrative actions, and analogous administrative law precedents are applicable." Abaqueta v. United States, 255 F. Supp. 2d 1020, 1024 (D. Ariz. 2003) (citation omitted).

In determining whether a decision is arbitrary and capricious, the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to

8

substitute its judgment for that of an agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "Administrative decisions should be set aside in this context . . . only for substantial procedural or substantive reasons as mandated by statute, . . . not simply because the court is unhappy with the result reached." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, 435 U.S. 519, 558 (1978). Lastly, when considering whether a decision is supported by substantial evidence, the Court must determine whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

## B. Analysis

The contentions set forth in Plaintiff's Second Amended Complaint and his response to the government's motion for judgment on the Administrative Record are somewhat difficult to discern. However, it appears that Plaintiff is reasserting arguments which were presented to the DAB: that Dr. Byrd was responsible for any deficient medical care the patient received; that the patient was competent and was entitled to leave the VAMC without further examination; and that he did not improperly release any confidential information concerning Patient B-5165. Upon consideration of the DAB's decision to

9

uphold three of the charges against Plaintiff and the 14-day suspension, pursuant to the applicable standard of review, the Court finds no reason to disturb the DAB's determination.

### 1. Failure to Adequately Perform Job Duties

The DVA charged Plaintiff with failing to adequately perform his job duties based upon his alleged failure to recognize the seriousness of the patient's medical condition, failure to contact the medical physician assigned as Officer of the Day or ensure he was seen by a medical physician per the agreed upon plan, and failure to ensure that the patient was provided adequate information with which to make an informed decision regarding refusal of treatment. The testimony revealed that, even though Plaintiff recognized that the patient should be examined by a medical doctor and relayed this information to Dr. Byrd, he did not contact Dr. Byrd or any other physician prior to final discharge of the patient. Further, there were no entries in the medical records which related to the patient being fully informed of his condition or the impact of refusing treatment.

Although Plaintiff asserted that he lacked the authority to contact another physician after he initially called Dr. Byrd, he did not present any policy or additional evidence in support of this assertion. In fact, the DAB observed inconsistencies in Plaintiff's processing of the patient and

10

his role as triage nurse. His June 4, 2003 proficiency report stated, in part, "The environment is ever-changing and Mr. Dollander has to use creative approaches to meet the complexity of the challenges he experiences on a daily basis . . . . His role as a Triage Nurse is an expanded role[,] . . . his role defines the classification as an expert clinician who must understand the system of the Uptown Division to perform his duties. Mr. Dollander has performed these duties outstandingly and has established firm lines of communication." (Id. at 647.)

The evidence in the record supports the DAB's determination that Plaintiff properly assessed the patient's condition, suggested that the patient had a medical problem, and developed an appropriate treatment plan with Dr. Byrd. However, the record also supports the DAB's determination that Plaintiff failed to carry out the agreed upon plan or provide adequate information with which the patient could make an informed decision regarding refusal of treatment. As such, the DAB's determination that Plaintiff failed to adequately perform his job duties was not arbitrary and capricious, an abuse of discretion, contrary to law, or otherwise unsupported by the record.

## 2. Failure to Comply with VAMC Policy Memoranda

The VAMC Uptown Division Triage Center's policy provided that the triage nurse had the responsibility to contact the appropriate staff to address the triage needs of patients. (See R. at 602-03.) The evidence in the record supports the DAB's conclusion that, based upon this policy, Plaintiff should have called the medical physician assigned as Officer of the Day for disposition of the patient, rather than Dr. Byrd, given the patient's symptoms and medical condition on June 30, 2004. Accordingly, under the appropriate standard of review, the DAB's decision to sustain this charge should be upheld.[9]

## 3. Disclosure of Confidential Patient Information

The DVA asserted that Plaintiff improperly released Patient B-5165's confidential information in his requests for congressional and senate inquiries. Plaintiff testified that any information he released was public information from the patient's death certificate or information he simply recalled from his memory.

The DAB observed that some of the released information could have been obtained from the patient's death certificate, however, additional medical information was released by

---

[9]As the DAB further observed, the essence of this charge was included within the failure to adequately perform job duties charge and therefore carried little additional weight.

Plaintiff without obtaining the proper authorization. This information included the identity of health care providers, doctors, nurses, and therapists as well as certain prescribed medicines. (R. at 344-45.) This information was only known by Plaintiff because he had reviewed the patient's medical record incident to his employment. (Id. at 345-47.) Because Plaintiff released this confidential medical information without obtaining proper authorization, this charge should also be sustained under the appropriate standard of review.

In sum, the evidence supports the DAB's determination that Plaintiff failed to properly carry out his job duties and failed to follow VAMC guidelines. The 14 day suspension is justified based upon these violations.

### III. CONCLUSION

Upon the foregoing, the government's "Motion for Judgment on the Administrative Record" (doc. no. 36) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER FINAL JUDGMENT** for Defendant and to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _19th_ day of May, 2008.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE

13